AUBREY MITTENTHAL & another *vs.* PIETRO MASCAGNI.

Suffolk.   January 14, 1903. — February 26, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Contract*, Validity.   *Jurisdiction.*

Where a contract is made in a foreign country between a citizen of that country and one electing it as his domicil by the terms of the contract, and the contract is to be performed partly in the foreign country but principally in the United States, a provision of the contract, that suits arising under it, with a certain exception, shall be brought in the courts of the foreign city in which the contract is made, if it does not appear to be unreasonable, will be enforced here.

A composer of operas, a subject of the King of Italy, made in Florence, Italy, a contract with a manager, who by a provision of the contract elected Italy as his domicil, by which the composer agreed to direct certain concerts, and direct and present certain operas, composed by him, in the course of a tour through such parts of the United States and Canada as the manager should designate, during a period of fifteen weeks, for the sum of $4,000 per week, $7,000 to be paid ten days before the composer's departure from a port in France and $7,000 more on his arrival at New York, with a provision, in substance, that the con-

tract should be governed by the laws of Italy, and that any suit upon it should be brought in the courts of Florence, Italy, except that the composer might sue for his compensation in the courts of New York. In an action against the composer for an alleged breach of this contract, it was *held,* that the provision limiting jurisdiction of suits under the contract, with the exception named, to the courts of Florence was valid, and was a good defence to the action in this Commonwealth.

CONTRACT, for alleged breach of an agreement in writing by the refusal of the defendant after part performance to render further services called for by the contract, under which the plaintiffs had paid to the defendant the sum of $14,000. Writ dated November 10, 1902.

In the Superior Court the case came on to be heard before *Richardson,* J., who ruled that the provision of the contract quoted by the court, giving exclusive jurisdiction to the courts of Florence, Italy, was not a bar to the action, and overruled a motion to dismiss, an answer in abatement and a demurrer. The defendant appealed, and by agreement of parties the judge, being of opinion that the correctness of the ruling so affected the merits that it ought to be determined by this court before any further proceedings were had in the Superior Court, reported the case for that purpose.

Immediately after the provision of the contract quoted by the court, was the following: " The firm of Mittenthal Brother declare special residence in Florence with Mr. Smith, Via Rondenelli, Number 5. The Master Mascagni also so declares residence with the Advocate Angilo Modigliani, Via Calzaioli, Number 9."

The provision for the payment of $7,000, which is mentioned by the court as to be performed in Italy, was contained in the following paragraph of the contract: " There shall be paid to the Master Mascagni seven thousand dollars ($7,000) ten days before his departure from Cherbourg, and before the seventeenth of September current a further sum of seven thousand dollars ($7,000) shall be deposited in his name and placed at his disposition with the representative of the Bank of Naples at New York, to be by him drawn upon the date of his arrival in said city, and of such deposit the master is to receive a proper advice before his departure from Europe, and he shall have the right to suspend his departure if said advices are not received by him. The

fourteen thousand dollars ($14,000) mentioned in this agreement shall be computed on the last four instalments and shall be considered as full payment of the last three weekly instalments and of one half of the twelfth instalment."

E. F. McClennen, for the defendant.

T. J. Barry, for the plaintiffs.

KNOWLTON, C. J.  This case comes before us on a report from the Superior Court submitting the question whether there was an error of the presiding judge in overruling the motion to dismiss, the answer in abatement, and demurrer filed by the defendant, and in ruling that the fifteenth paragraph of the contract between the plaintiffs and defendant, upon certain facts agreed, was not a bar to the prosecution of the action in this Commonwealth.  The contract referred to was made in Florence, Italy, where the defendant, a subject of the King of Italy, had his home, and where the plaintiffs, citizens of the State of New York, elected a domicil by a provision of the contract. By it the defendant undertook to direct certain concerts, and direct and present certain operas, all composed by him, in the course of a tour through such parts of the United States and Canada as the plaintiffs should designate, covering a period of fifteen weeks, for the sum of $4,000 per week, with sundry provisions for expenses and the like, and other stipulations prescribing the rights of the parties in various particulars which it is unnecessary to state.  The contract was in the Italian language, and, according to the translated copy set forth in the pleadings, it contains the following provisions : " The present contract, in its form and substance, is regulated by the Italian laws, by will of the parties concerned and according to article nine of the Italian Civil Code.  Whatever difference or question there might arise between the parties, including the agent, will be acted upon by the civil authorities of Florence, Italy.  Maestro Mascagni reserves the right of direct action in New York for the payment of his recompense ; and therefore, he alone has the faculty to derogate the competence of the established contract."  The defendant moved to dismiss this suit, and answered in abatement and demurred on the ground that, under this provision, our courts have no jurisdiction.

The construction and legal effect of a contract is governed by

the *lex loci contractus* unless there is something in it indicating a different intention of the parties. *O' Regan* v. *Cunard Steamship Co.* 160 Mass. 356. *Brockway* v. *American Express Co.* 168 Mass. 257. *Fonseca* v. *Cunard Steamship Co.* 153 Mass. 553. *In re Missouri Steamship Co.* 42 Ch. D. 321. *Hamlyn* v. *Talisker Distillery,* [1894] A. C. 202. This contract was made in Italy where one of the parties had his permanent home and the other a domicil elected by the terms of the contract. It was to be performed in part there, for the plaintiffs were to pay the defendant $7,000 ten days before the time fixed for his departure from Cherbourg for the United States, but the further performance was to be in the United States. The intention of the parties that it should be governed by Italian laws was not left to inference, but was expressed in words.

The first and principal question is, What is the effect of the stipulation in regard to the adjustment of differences or questions between the parties? We have little doubt that it was meant to give exclusive jurisdiction of all such matters to the Italian courts, saving only jurisdiction of suits by the defendant to recover his compensation, which is given to the courts of New York. This seems to be the meaning of the words of this translation, and another translation set out in the answer in abatement, whose correctness has not been disputed, tends to make this meaning even clearer. It is averred in the answer in abatement that such a provision is legal and binding under the laws of Italy. Of course, if this be true, it is immaterial what construction is put upon it under our laws. There is certainly nothing so objectionable in it, on grounds of public policy, that our courts will refuse to give it effect under our treaty with Italy, which gives the citizens of each country full rights in the courts of the other. *Fonseca* v. *Cunard Steamship Co.* 153 Mass. 553. It is said in the report that the hearing was upon the pleadings " without objection that there was no reply to the answer in abatement." We are not quite certain whether, in the absence of a reply, the averments of this answer were taken to be true. If they are true, it is the duty of our courts to give the contract effect according to the law of Italy ; but we infer, in the absence of proof in support of the averments of the answer, that the case was considered upon the declaration and

admitted facts only. Assuming this, we must also assume that the law of Italy is like our own (*Harvey* v. *Merrill*, 150 Mass. 1), and we come to the question whether such an agreement of parties to a contract is valid here.

It is decided that an agreement in a contract that the parties shall not avail themselves of their right to an appeal to the courts for the settlement of their controversies, but shall submit them to private arbitration, will not be enforced because it is such an utter abnegation of one's legal rights as should not be permitted. *Rowe* v. *Williams*, 97 Mass. 163. *Wood* v. *Humphrey*, 114 Mass. 185. *Miles* v. *Schmidt*, 168 Mass. 339. On the other hand it is allowable for parties to make such agreements in reference to preliminary and incidental matters of dispute, so long as they retain the right to appeal to the courts for the determination of any substantive question of liability. *Hood* v. *Hartshorn*, 100 Mass. 117. *Haley* v. *Bellamy*, 137 Mass. 357. *Palmer* v. *Clark*, 106 Mass. 373. *Hutchinson* v. *Liverpool & London & Globe Ins. Co.* 153 Mass. 143. Perhaps the tendency in modern times is to permit greater freedom in contracting in matters of this kind than formerly. *Miles* v. *Schmidt*, 168 Mass. 339. *Daley* v. *People's Building, Loan & Saving Association*, 178 Mass. 13. In most cases, certainly in a case like the present, there is no occasion for the protection of the dignity or convenience of the courts. The contract was between citizens of foreign States who, so far as our tribunals are concerned, well might make any reasonable arrangement for the settlement of their disputes.

The determining question seems to be whether such a contract as this is so improvident and unreasonable, such an abnegation of legal rights, that the government, for the protection of mankind, will refuse to recognize it, even when made in a foreign country by subjects or citizens of that country. We can fancy the parties to this contract at the time of making it saying something like this : " As the performance of this contract will not only involve travel through one or more foreign countries in going to America and returning, but will involve journeying long distances through a great many independent States, each of which has its own courts and system of laws, under some of which a person sued in a civil action, when about to leave the State may be arrested and held to bail or in imprisonment, if suits may be

brought in any one of these numerous jurisdictions, there is a liability to great trouble and expense on the part of the defendant in meeting the litigation. The contract contemplates a service of fifteen weeks, after which Maestro Mascagni intends to return to his permanent home in Florence. It will be better and more reasonable for both of us to provide that our controversies, if any arise, shall be settled by the courts of Florence, than to leave both parties subject to suits in forty or fifty different jurisdictions, at great distances from the home of either." If, moved by such considerations, the parties made the agreement in question, shall the court say that they were *non compotes mentis*, and that their agreement was so improvident and unreasonable that it cannot be permitted to stand ? The case is quite unlike *Nute* v. *Hamilton Ins. Co.* 6 Gray, 174, although it has some features in common with that. In that case the provision was contained in a by-law of a mutual insurance company, and it undertook to limit claimants to one county in a small State for the venue of actions. The principles laid down in *Daley* v. *People's Building, Loan & Saving Association,* 178 Mass. 13, are applicable, although the cases are different in some particulars. Similar doctrines are stated in *In re New York, Lackawanna & Western Railroad,* 98 N. Y. 447, 452, and *Greve* v. *Ætna Live Stock Ins. Co.* 81 Hun, 28.

There is no attempt here to deprive either party of the right of appeal to the courts, as in *Rowe* v. *Williams,* 97 Mass. 163, but only an attempt to narrow the area within which suits may be brought. This is analogous to the limitation of the subjects of which the courts shall have exclusive jurisdiction, by a provision for the arbitration of incidental and subsidiary questions out of court, which is approved in cases above cited. It is also analogous to the limitation by contract of the time within which suits may be brought. *Eliot National Bank* v. *Beal,* 141 Mass. 566. We are of opinion that this part of the contract is valid.

The defendant has done nothing that deprives him of his right to rely on the contract. The suit which he brought prior to this was upon a later contract, and against parties not identical. Besides, in his declaration in that case, in stating inducements, he took pains to aver that there was no right to sue upon this contract in this country. The second suit, which he brought

after he had been held to answer in this, contains a similar averment, and apparently he brought it to avail himself of such rights as he might have in case the decision in the present suit should be adverse to him. We are of opinion that the ruling was erroneous.

*Motion granted.*