**WM. H. MULLER & CO., Inc.,**
**Appellant,**

**v.**

**SWEDISH AMERICAN LINE LTD. and**
**Transatlantic Steamship Company,**
**Ltd., Appellees.**

**No. 306, Docket 23552.**

United States Court of Appeals
Second Circuit.

Argued April 20, 1955.

Decided July 15, 1955.

Hill, Rivkins, Middleton, Louis & Warburton, New York City (George B. Warburton, David L. Maloof, John G. Poles, New York City, of counsel), for appellant.

Haight, Gardner, Poor & Havens, New York City (Charles S. Haight, Richard G. Ashworth, New York City, of counsel), for appellees.

Before FRANK, MEDINA and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

Appellant, Wm. H. Muller & Co., a New York corporation, was the con-

signee of a shipment of 1,000 bags of cocoa beans which were being transported by appellees, of Gothenburg, Sweden, from Gothenburg to Philadelphia, aboard appellees' vessel, the "Oklahoma." The "Oklahoma" was lost at sea.

Appellant filed a libel in the United States District Court for the Southern District of New York to recover for the loss of its cargo. The District Court granted appellees' motion to decline jurisdiction and dismissed the libel on the ground that on the showing made he should give effect to a clause in the bill of lading providing for exclusive jurisdiction of the controversy in the Swedish courts. From the order dismissing the libel, this appeal is prosecuted.

Clause 2 of the bill of lading provides as follows:

"Jurisdiction. Any claim against the carrier arising under this bill of lading shall be decided according to Swedish law, except as provided elsewhere herein, and in the Swedish courts, to the jurisdiction of which the carrier submits himself."

Appellant contends that this clause is contrary to the United States Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. Appellant specifically points to that section of the Act which provides that,

"Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, *or lessening such liability otherwise than as provided in this act,* shall be null and void and of no effect. A benefit of insurance in favor of the carrier, or similar clause, shall be deemed to be a clause relieving the carrier from liability." 49 Stat. 1208, 46 U.S.C.A. § 1303 (8). (Emphasis supplied).

It will be noted at the outset that this section does not expressly invalidate the jurisdictional agreement contained in the bill of lading here involved. Nor, we hold, may the Act properly be interpreted to invalidate such agreements. It is perhaps worth noting that the present Australian Carriage of Goods by Sea Act does declare provisions of the sort here involved to be null and void. Formerly the Canadian Act did likewise. Knauth on Bills of Lading, p. 238. We think that if Congress had intended to invalidate such agreements, it would have done so in a forthright manner, as was done in the Canadian Act of 1910. The Carriage of Goods by Sea Act contains no express grant of jurisdiction to any particular courts nor any broad provisions of venue: in this respect it differs from the Federal Employers' Liability Act which was involved in Krenger v. Pennsylvania R. Co., 2 Cir., 174 F.2d 556. On that account, as indeed in other respects, this case must be distinguished from that. Certainly the clause here involved is not one necessarily "relieving the carrier or the ship from liability."

The appellant, in an effort to bring this case within the phrase italicized in the above quoted extract from the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(8), argues that if trial is to be had in Sweden it will have to undergo a substantial expense in transporting expert witnesses there to testify as to the market value of the lost cargo. It is urged that such an expense is a "lessening" of liability within the meaning of the above quoted section of the Act. We note that appellant might reduce this expense by taking depositions of these witnesses, as he appears to have done already. But that aside, we do not think that such possible expense, which is only incidental to the process of litigation, is enough to bring this jurisdictional agreement within the ban of § 1303(8).

It is further contended that the enforcement of this clause would be in contravention of public policy. It is true that there has been much difference of opinion over the validity of contractual provisions which purport to limit a jurisdiction which would otherwise attach. The law has long viewed such agree-

ments askance. This can be readily seen by comparing § 558 of the Restatement of the Law of Contracts with § 617 of the Restatement of Conflicts of Law. For a general discussion of the older law, see also Insurance Co. v. Morse, 20 Wall. 445, 87 U.S. 445, 22 L.Ed. 365; 45 Yale Law Journal 1150; 22 Cornell Law Quarterly 456; 6 Corbin on Contracts § 1445.

However, we accept the conclusion of Judge L. Hand stated in his concurring opinion in the Krenger case, supra [174 F.2d 561], viz.:

"In truth, I do not believe that, today at least, there is an absolute taboo against such contracts at all; in the words of the Restatement [of Contracts, § 558], they are invalid only when unreasonable; and Mittenthal v. Mascagni [183 Mass. 19, 66 N.E. 425, 60 L.R.A. 812], is a notable instance in which a contract in futuro was held 'reasonable.' What remains of the doctrine is apparently no more than a general hostility, which can be overcome, but which nevertheless does persist."

From this it follows that in each case the enforceability of such an agreement depends upon its reasonableness. We agree with the appellant to this extent: the parties by agreement cannot oust a court of jurisdiction otherwise obtaining; notwithstanding the agreement, the court has jurisdiction. But if in the proper exercise of its jurisdiction, by a preliminary ruling the court finds that the agreement is not unreasonable in the setting of the particular case, it may properly decline jurisdiction and relegate a litigant to the forum to which he assented. Such, essentially, was our holding in Cerro De Pasco Copper Corp. v. Knut Knutsen in the case of The Geisha, 2 Cir., 187 F.2d 990. We adhere to that ruling.

We come therefore to a consideration of the reasonableness of this particular agreement in the setting of this case. The "Oklahoma" was not only Swedish owned: it also was constructed in that country. All of the members of the "Ok-

lahoma's" crew reside in Sweden. Hence most of the evidence as to unseaworthiness will be more readily available in a Swedish court. There was an undisputed showing that Swedish courts apply the same measure of damages as American Maritime Courts and that limitation proceedings under Swedish law will be no more restrictive than under American law on libellant's recovery. Further, there is no contention that the Swedish courts are not capable of adjudicating this case fairly and justly.

On this showing, we think the judge below could rightly conclude that the jurisdictional agreement was not unreasonable and that the adherence of the parties to that agreement, which for aught that appears was freely given, should be given effect. In declining jurisdiction and dismissing the complaint we think he was well within the limits of lawful judicial discretion.

Affirmed.